IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YOLANDA BONILLA, HER HUSBAND JUAN TIRADO BONANO AND THEIR CONJUGAL PARTNERSHIP<br><br>*PLAINTIFFS,*<br>VS.<br><br>STARWOOD HOTELS AND RESORTS WORLDWIDE, INC.; AND SHERATON PUERTO RICO MANAGEMENT, LLC<br>*DEFENDANTS.* | CASE NO.:<br><br>RE: AGE DISCRIMINATION, RETALIATION, DAMAGES<br><br>JURY TRIAL REQUESTED |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW** the plaintiffs Yolanda Bonilla, her husband Juan Tirado Bonano and their conjugal partnership, represented by the undersigned attorneys and respectfully state, allege and pray as follows:

### I.      NATURE OF ACTION

1.      This is an action filed pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. ("Title VII"), the Civil Rights Act of 1991 42 U.S.C. section 1981a ("Civil Rights Act"), for alleged acts of age discrimination and retaliation against plaintiff Yolanda Bonilla for opposing Defendants' unlawful employment practices by filing a charge of discrimination before the Puerto Rico Labor Department's Anti-discrimination Unit.

2.      This is also an action filed pursuant to Puerto Rico's Retaliation Act, Law No. 115 of December 20 1991, 29 L.P.R.A. § 194, et seq. ("Act 115"), Act 100 of June 30, 1959, as amended ("Act 100") and Act 80 of May 30, 1976, as amended ("Act 80") seeking redress from

the Defendants for conduct in the workplace which constitutes harassment, employment discrimination by reason of age, retaliation and wrongful termination.

## II.   JURISDICTION

3. This Court has jurisdiction to entertain the claims pleaded herein pursuant to 42 U.S.C. § 626, et seq., Section 633 a(c)-(d); and 28 U.S.C. § 1331.

4. Plaintiffs also invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and seeks relief under Act 115, Act 100 and Act 80 and under Torts law of Puerto Rico, Article 1802 of the Puerto Rico Civil Code, 31 LPRA § 5142-5142.

5. All conditions precedent to jurisdiction under ADEA have been complied with. Plaintiff filed her charge of discrimination before the Puerto Rico Department of Labor's Anti-Discrimination Unit and the Equal Employment Opportunity Commission and received the Right to Sue Letter on March 26, 2013, in accordance with Section 633 (a)(d) of ADEA. Plaintiff has filed the instant action within 90 days of the receipt of the notification.

6. Plaintiffs are citizens of the Commonwealth of Puerto Rico.

7. This action involves a sum in excess of $75,000.00, exclusive of interest and cost.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a), (b) and (c) since all the discriminatory employment practices alleged herein were committed within the Commonwealth of Puerto Rico.

## III.   JURY TRIAL DEMANDED

9. The Plaintiffs demand a jury trial on all causes of action pleaded in the Complaint.

## IV.   THE PARTIES

10. Plaintiff Yolanda Bonilla ("Bonilla") is a natural person of 53 years of age, married to Juan Tirado Bonano and resident of Carolina, Puerto Rico. Bonilla is an employee within the meaning of ADEA (Section 630(f)) and belongs to the protected class under ADEA provisions.

2

11. Co-plaintiff Juan Tirado Bonano ("Tirado") is of legal age, married to Bonilla and resident of Carolina, Puerto Rico. At all times set forth hereinafter, Mr. Tirado was married to Bonilla.

12. Defendant Starwood Hotels and Resorts Worldwide, Inc. is a foreign corporation and is upon information and belief, the owner of the St. Regis trademark under which the St. Regis Bahia Beach Resort is operated and administered.

13. Defendant Sheraton Puerto Rico Management, LLC is a foreign limited liability company authorized to do business in Puerto Rico, and is upon information and belief, engaged in administrating The St. Regis Bahia Beach Resort, Puerto Rico.

14. Defendants are hereinafter collectively referred to as "Defendants" or "Starwood". At all time Defendants have been an "employer" as all applicable statutes define that term.

## V.     FACTUAL ALLEGATIONS

15. Bonilla began her employment with Starwood Hotels at the The St. Regis Bahia Beach Resort ("Hotel") located in Rio Grande, Puerto Rico on September 8, 2010. She was 50 years old. At the time of her wrongful termination on October 12, 2012, Bonilla was 52 years of age.

16. Bonilla occupied the dual position of Payroll Master and General Cashier of the Hotel since she was first hired by Starwood. Bonilla's duties were not set forth in writing by Starwood, but she performed, among others, the following tasks:

   a. Prepare Bi-weekly payroll for about 325 hotel employees.

   b. Process employee adjustments, SINOT documents and income information for employee verification.

   c. Prepare monthly closings.

   d. Make all daily adjustments or corrections to register employee's entrance and departure of the work area in the timesaver system.

3

  e.  Count daily cash drop and prepare daily bank deposit.

  f.  Enter drop amount to SAP (payroll program) to determine daily outlets (hotel concessions) revenues.

  g.  Audit outlets cashiers and desk agents' banks.

  h.  Disburse petty cash, paid outs and due backs.

17. Bonilla's hourly wage at the time of termination was at a rate of $15.34 per hour.

18. Bonilla has a BA in Management and 25 years of experience in the hotel industry's accounting and finance departments. Her past experience, all at management level, include:

  a.  Financial Manager Account Coordinator - Johnson Controls, Inc., Carolina, PR

  b.  Lead Front Desk/Accountant - Fort Hamilton Army Lodging, New York

  c.  Regional Payroll Master - Field Hotel Associates, New York

  d.  Assistant to the Finance Controller- Sheraton Hotel, San Juan, PR

  e.  Financial Accountant, Payroll Manager and Casino Accounting Supervisor - Inter-Continental Hotel, Isla Verde, PR

19. Bonilla was hired by Mrs. Yvonne Ferguson (Director of Finance) and her immediate supervisor was Mrs. Amarilys Vazquez (Assistant Director of Finance). They no longer work at the Hotel. Bonilla's supervisor at the time of termination was Mrs. Ruth Rivera (new Assistant Director of Finance).

20. Bonilla was the oldest employee in her department, the Finance Department. The staff in Finance Department at the time of termination was, upon information and belief, as follows:

  a.  Ruth Rivera, Assistant Director of Finance, 35 years old

  b.  Xiomara Pagan, Income Auditor, 26 years old

  c.  Deibeline Colón, Accounts Payable Agent, 34 years old

  d.  Vilmarie Medina, Accounts Receivables Group Billing Agent, 27 years old

  e. Salma Meléndez, Accounts Receivables Agent, 26 years old

21. The prior staff in Bonilla's department has included, upon information and belief, the following employees:

  a. Yvonne Ferguson, Director of Finance, 37 years old

  b. Amarylis Vazquez, Assistant Director of Finance, 34 years old

  c. Vannesa Acosta, Accounts Payable Agent, 34 years old

  d. Diana Rojas, Accounts Receivables Agent, 27 years old

22. During Bonilla's employment with Starwood, she was the subject of public mockery, derogatory comments and denigration by supervisors and co-workers regarding her age. Following are a few instances:

23. Bonilla had asked Vanessa Acosta (Accounts Payable Agent) for some information during work hours and she replied to her "**Ay, jodía vieja!**" ("Ah, fucking old lady!"). Bonilla told her never to call her that; Acosta replied that she was kidding around. This incident happened around October 2011. Bonilla reported this incident to Rosa Medina (Human Resources Coordinator). No action was taken by her employerStarwood.

24. While sitting on her desk, Rosa Medina (Human Resources Coordinator) approached Bonilla and overlooked the top of her head. She noticed Bonilla had not retouched her hair color and told her out loud: **"Wow, you have a lot of gray hair!"** This incident happened early 2012. Bonilla felt she couldn't make a report, since Mrs. Medina was supposed to be the person watching for her civil rights and fair work environment at the Human Resources Department.

25. While working in her office, Yvonne Ferguson (Director of Finance) looked at Bonilla's wardrobe and told her: **"My mother owns a shirt just like yours"** insinuating that Bonilla dressed like an older person. This incident happened in 2011. Bonilla reported this incident to

Rosa Medina (Human Resources Coordinator) and Rosalía González (Human Resources Manager). No action was taken by her employer Starwood.

26. While Bonilla was reading a newspaper article on plastic surgeon Dr. Rodríguez Terry, Sharon Bathory (Human Resources Director) asked her: **"Would you consider plastic surgery?"** Bonilla felt uncomfortable and did not continue the conversation. This incident happened sometime in September 2010. Bonilla felt she couldn't make a report, since Mrs. Bathory was also supposed to be the person watching out for her civil rights and a fair work environment as head of the Human Resources Department.

27. Bonilla was constantly called "**doñita**" ("old lady"). This was started by her supervisor Yvonne Ferguson (Director of Finance) and then taken on by co-workers such as Diana Rojas, Xiomara Pagán and Vanessa Acosta. Bonilla requested that they stop using such adjective to describe her, but such request was never honored.

28. Mockery from all her peers insinuating the **oldies radio stations** Bonilla listens to is the choice of old people.

29. The working environment at the Hotel was hostile and demoralizing because of the continuous comments and discrimination based on her age. Bonilla's self-esteem was diminished to the point that Bonilla underwent numerous procedures to improve her appearance, including a minor face lift, which Bonilla terribly regrets and has caused her constant migraines.

30. Since Bonilla began expressing discomfort with the discriminatory pattern and hostile environment in her workplace, her supervisors began to "build a file" documenting alleged mistakes on her part.

31. Bonilla was given one Progressive Disciplinary Action report dated April 17, 2012 (**See Exhibit 1**) and a memo to her employee file dated May 23, 2012 (**See Exhibit 2**). There is no

6

truth to the alleged mistakes set forth in such reports. Bonilla wrote written replies to each of them and delivered them to the Human Resources Department.

32. Because of her age, Bonilla was not considered by her supervisors and upper management for better positions available within the Hotel for which Bonilla was equally or the best qualified applicant. Younger less qualified employees were always selected and the long-promised progress and better opportunities in the workplace never materialized. Following are a few examples:

33. On December 9th 2010, Sharon Bathory (Human Resources Director) sent Bonilla an email in which she compared Bonilla to her colleague Ms. Izebel Espaillat (Payroll Master of Sheraton) and the latter's abilities to perform the task requested in two minutes instead of the customary ten minutes, in a clear allusion of their age difference and how younger people have better and faster work abilities. Ms. Espaillat is approximately 30 years younger than Bonilla. **(See Exhibit 3)**

34. On December 10th 2010, Bonilla met with her then-supervisors Ivonne Ferguson (Director of Finance) and Amarilys Vazquez (Assistant Director of Finance) in reference to the email sent to her by Sharon Bathory (Human Resources Director) the day before. Bonilla verbally expressed to them her concerns regarding the email, which Bonilla felt made a degrading reference to her age because she compared her to a younger person and her ability to perform the same task in two minutes. Bonilla informed her supervisors that the phrasing on the email was questionable and unwarranted. Bonilla informed them that it was illegal and unnecessary, being that the difference in time frame to her performing the tasks were due to her employer not providing her with an adequate training of the system. Had they given her the same training to learn the system, Bonilla would have also been able to perform the task in two

minutes regardless of age. Amarilys Vazquez admitted that the email sent by Sharon Bathory was inappropriate.

35. For about three months after this incident, Bonilla had to put up with the continuous jokes from her co-workers that Ms. Espaillat (Payroll Master of Sheraton) was able to do her task in two minutes and that because of her age Bonilla was slower. Bonilla was informed by Ivonne Ferguson (Director of Finance) and Amarilys Vazquez (Assistant Director of Finance) to discontinue any communication with both Sharon Bathory (Human Resources Director) and Izebel Espaillat (Payroll Master of Sheraton) and that in January 2011 a task force would be brought on board for additional payroll system training.

36. On March 3, 2011 Bonilla filed a report with Starwood's helpline at www.hotethics.com. This website serves as a vehicle for reporting conduct that may be unethical, illegal, in violation of professional standards, or otherwise inconsistent with Starwood's Worldwide Code of Business Conduct and Ethics. Bonilla reported the discriminating comments and pattern, due to her age, by her supervisors Sharon Bathory (Human Resources Director) and Yvonne Ferguson (Director of Finance) and colleagues. **(See Exhibit 4)**

37. On March 2011, the position of Human Resources Coordinator became available and Bonilla applied for the position. Bonilla emailed Sharon Bathory (Human Resources Director) expressing her interest in applying for this position. Bonilla spoke to her about her experience and forwarded her a copy of her resume. In an email response, Bathory told her that she needed someone more experienced in human resources. The position was then given to Lydia Pabón who used to be a receptionist at the Hotel. Lydia Pabón is about 33 years old. Bonilla was the better qualified candidate, but for her age, was not given the opportunity.

38. On August 2011, the position of Accounts Receivables Agent became available and Bonilla applied for the position. During her interview with Amarilys Vazquez (Assistant Director

8

of Finance) she asked Bonilla to remove her request for the position under the pretext that the department had urgency to hire someone who could perform the tasks with minor training. Per Amarilys Vazquez' request, Bonilla withdrew her application. To her sad surprise, the position was given to her co-worker Vanessa Acosta (Accounts Payable Agent), who is at least 15 years younger than her. Vanessa Acosta had no experience in accounts receivables or any educational background that warranted her getting the position over her. Bonilla was the better qualified candidate, but for her age, was not given the opportunity.

39. In August 2nd 2011, Bonilla spoke to Rosa Medina (Human Resources Manager) and informed her that the selection process for the Accounts Receivables Agent position was unfairly handled. Medina told her that Laura Hofer (temporary Task Force) and Sharon Bathory (Human Resources Director) were in charge of making that decision.

40. On August 9, 2011, Bonilla sent an email to Amarilys Vazquez (Assistant Director of Finance) who had asked her to withdraw her application for the Accounts Receivables Agent position inquiring about why someone else with no experience was chosen, contrary to her representations **(See Exhibit 5)**. Amarilys Vazquez replied to her and wrote on her email: "I'm really sorry you did not get equal opportunity but unfortunately neither me [Amarilys Vazquez] or Ivonne [Ferguson] has nothing to do with the decision". **(See Exhibit 6)**

41. On September 22, 2011, the position of Assistant Director of Finance became available and Bonilla applied for it. Bonilla was interviewed by John Rodríguez (Regional Director of Finance) and at that time he informed her that he needed someone who presently held a position as assistant controller. Mr. Rodríguez told her he wanted her to continue to learn bank reconciliations. He also informed her that in the future her present position (Payroll Master/General Cashier) could be changed to Payroll Master/Accounts Receivables or Payroll Master/Accounts Payable. The Assistant Director of Finance position was given to Ruth Rivera,

a new hire who is 16 years younger than Bonilla, and who did not hold a position as assistant controller ―as Rodríguez represented was a necessary qualification. Bonilla was equally or better qualified for the position as the new hire, but for her age, was not given the opportunity.

42. On January 2012, Bonilla went to the doctor because she could not sleep due to the stressful work environment. Bonilla continued reenacting these hostile situations and mentally going through every incident at her workplace. The doctor found her blood pressure was high, and on her next visit Bonilla had an irregular heartbeat.

43. On or around April 9-13, 2012, the position of Accounts Receivables Group Billing Agent became available. Bonilla was on vacation and was not given the opportunity to apply for the position even though she was fully qualified for it and had expressed prior interest in applying for new positions that became available. The position was given to co-worker Vilmarie Medina Panet (formerly an on-call Human Resources employee) who had no experience or educational background in accounting and who is 25 years younger than Bonilla. Bonilla was the better qualified candidate, but for her age, was not given the opportunity.

44. On April 17, 2012, Bonilla met with Nicole Keeffe (new Director of Finance) to inquire why she was not given the opportunity to apply for the Accounts Receivables Group Billing Agent position.  Bonilla mentioned her previous conversation with John Rodriguez (Regional Director of Finance) and his promise that Bonilla would be given an opportunity to fill the next available position. Nicole Keeffe's response was that she had forgotten about that.

45. On April 18, 2012, Bonilla met with Ruth Rivera (Assistant Director of Finance) and expressed her that she felt that she was being discriminated against because of her age and that Starwood was not taking into consideration her performance and educational experience.  Ms. Rivera seemed truly upset that Bonilla questioned their decision to give the Accounts Receivables Group Billing Agent position to Vilmarie Medina Panet.

46.     On April 17, 2012, a day after expressing her discontent with Starwood's discriminatory actions when filling out available positions with less qualified, younger candidates, Bonilla was given a Progressive Disciplinary Action report by Ruth Rivera (Assistant Director of Finance) allegedly for a payroll mistake that had occurred while Bonilla was on vacation back in April 9-13, 2012. **(See Exhibit 1)**

47.     On April 26, 2012, Bonilla wrote a letter contesting the report and the alleged mistakes committed by her and delivered it to Human Resources. **(See Exhibit 7)**

48.     On May 22, 2012, Sharon Bathory (Human Resources Director) sent Bonilla a reply to her April 26, 2012 letter. **(See Exhibit 8)** Since the information contained on the email was inaccurate and yet another pretext to continue to "build a file" against Bonilla, again, on May 25, 2012 Bonilla replied to that communication setting the record straight. **(See Exhibit 9)**. Bonilla never received a response from Starwood to her last communication.

49.     On June 2012, Bonilla had to take time off work to rest because of the continuous pressure.

50.     On July 13, 2012 Ruth Rivera (Assistant Director Finance) called to give her instructions regarding a new work procedure: "unlocking" the payroll system to make an adjustment to an employee's time card. When Bonilla asked her where she could find such feature in the payroll system, she replied: "It doesn't take any common sense to know that." Bonilla told Mrs. Rivera that she was being disrespectful and Mrs. Rivera hung up on her. Bonilla tried to report the incident to the Human Resources Department, but both Mrs. Roxana Olazagasti (new Human Resources Director) and Rosa Medina (Human Resources Manager) expressed to her that they were not available to assist her at that time.

51.     On that same day, July 13, 2012, Bonilla filed a report with Starwood's helpline at www.hotethics.com. Bonilla reported the discriminating comments and hostile environment due to her age. **(See Exhibit 10)**

52.     On July 18, 2012, Bonilla filed a charge of discrimination before the Puerto Rico Labor Department's Anti-discrimination Unit and the EEOC. Starwood was notified of the filing of the charges. A hearing was held on September 26, 2012 at the Labor Department's Anti-discrimination Unit.

53.     Shortly thereafter, on October 12, 2012 Bonilla was terminated from her employment with Starwood under the pretext that during the last thirty (30) days, her performance had been unacceptable. Starwood listed several examples of such misdoings, all of which were rebutted by Bonilla. **(See Exhibit 11)**

54.     The proffered justification for the termination of Bonilla's employment with Starwood was clearly a pretext to hide the discriminatory and retaliatory pattern to which Bonilla was subject during her tenure.

55.     Bonilla at all times opposed Defendants' unlawful, discriminatory and harassing practices against her. Nevertheless, Defendants never took any type of remedial nor corrective measure in order to put an end to the unlawful and discriminatory practices by Starwood employees and managers against her.

56.     Immediately after Bonilla's filing of the discrimination charge before the Puerto Rico Labor Department's Anti-discrimination Unit and the EEOC, Defendants started proffering excuses to find mistakes and faults in order to discipline Bonilla, in retaliation for having filed the discrimination charge.

57.     Defendant's actions negatively and drastically affected Bonilla's health and created intolerable working conditions. . Defendants' actions and omissions created a hostile working

environment because of Bonilla's age and opposition to Defendants' unlawful employment practices.

58. As a result of Defendants' actions, Bonilla has become very anxious, depressed, and has felt betrayed and frustrated.

59. The discriminatory and retaliatory actions against Bonilla were willful and maliciously intended to discriminate against her due to her age and to punish her for having filed the discrimination charge before the Puerto Rico Labor Department's Anti-discrimination Unit and the EEOC.

60. As a direct consequence of the adverse and illegal actions taken by Defendants against Bonilla, she has suffered considerable financial and emotional damages.

61. The first and most obvious consequence of the illegal and discriminatory actions taken against Bonilla is the loss of wages. She has not been able to find a new job as of yet, even though she has applied for several job openings.

62. In addition, Bonilla is entitled to a compensation for the emotional and mental damages which Defendants' illegal actions have caused her. The uncertainty of losing her livelihood at this stage in her life, as well as the frustration and deception of experiencing the aforementioned incidents have had considerable effects over Bonilla's emotional and mental state.

63. As a result of Defendant's actions, Bonilla has suffered emotional damages, which include anxiety, feeling of betrayal, insecurity caused by financial uncertainty, loss of enjoyment of life, as well as an affront to her dignity as a human being. Bonilla's damages continue to increase with the passage of time.

64. Bonilla's husband Tirado has suffered tremendously due to the harassing and discriminatory actions to which his wife has been submitted by Defendants.

65. As a result of the events described herein, Tirado and the conjugal partnership have suffered considerable damages, including significant emotional and physical distress, harm to their marital relationship, as well as an affront to their dignity as human beings.

66. Defendant's conduct is the proximate cause of all of Plaintiffs' damages.

## VI.   FIRST CAUSE OF ACTION – AGE DISCRIMINATION

67. Plaintiffs repeat and re-allege each and every preceding allegation as if fully set herein.

68. This first cause of action is in violation of Title VII, the Civil Rights Act, ADEA, and Act 100.

69. Defendants, their agents, servants and/or employees, by their conduct herein alleged, intentionally, willfully and without justification have discriminated against Bonilla in the terms and conditions of her employment on the basis of her age.

70. Bonilla informed her supervisors of the continuous harassing conduct she was receiving from her co-workers. Her supervisors and Starwood management did nothing to stop the harassment and prevent it from reoccurring, in violation of the provisions of Title VII and Act 100.

71. Also because of her age, Bonilla was not considered by her supervisors and upper management for better positions available within the Hotel for which Bonilla was equally or the best qualified applicant. Younger less qualified employees were always selected over Bonilla and the long-promised progress and better opportunities in the workplace never materialized.

72. After Bonilla's termination she was replaced by Mr. Mario Vigil who is, upon information and belief, younger than 40 years of age.

73. As a direct result of the aforementioned unlawful discrimination, Bonilla suffered severe mental, psychological, moral and emotional pain, anguish and distress, and has sustained a loss of happiness and loss of the capacity to enjoy life.

74.     Defendants acted willfully and with reckless disregard of the law in harassing and discriminating against Bonilla solely because of Bonilla's age.

75.     Defendants' discriminatory conduct against Bonilla constitutes a willful violation of ADEA and as a result thereof, Defendants are liable to Plaintiff for liquidated damages under said statute.

76.     Defendants' discriminatory actions were intentional, malicious, and with reckless disregard to Bonilla's rights and as such, are subject to punitive damages under ADEA.

### VII.    SECOND CAUSE OF ACTION - RETALIATION

77.     Plaintiffs repeat and re-allege each and every preceding allegation as if fully set herein.

78.     On July 18, 2012, Bonilla filed a charge of discrimination before the Puerto Rico Labor Department's Anti-discrimination Unit and the EEOC. Starwood was notified of the filing of the charges.

79.     A hearing was held on September 26, 2012 at the Labor Department's Anti-discrimination Unit.

80.     Shortly thereafter, on October 12, 2012 Bonilla was terminated from her employment with Starwood in retaliation for having filed the charge of discrimination against Starwood before a government agency.

81.     The events described herein constitute retaliation in violation of ADEA, Title VII, Act 100 and Act 115.

### VIII.   THIRD CAUSE OF ACTION – UNJUST DISMISSAL

82.     Plaintiffs repeat and re-allege each and every preceding allegation as if fully set herein.

83.     On October 12, 2012 Bonilla was terminated from her employment with Starwood. The proffered justification for the termination of Bonilla's employment with Starwood was clearly a

pretext to hide the discriminatory and retaliatory pattern to which Bonilla was subject during her tenure.

84. The events described herein constitute an unjust dismissal, in violation of Act 80.

### IX. FOURTH CAUSE OF ACTION – TORTUOUS ACTIONS

85. Plaintiffs repeat and re-allege each and every preceding allegation as if fully set herein.

86. Bonilla's husband Tirado has suffered tremendously due to the harassing and discriminatory actions to which his wife was exposed to by Defendants.

87. As a result of the events described herein, Tirado and the conjugal partnership have suffered considerable damages, including significant emotional and physical distress, harm to their marital relationship, as well as an affront to their dignity as human beings.

88. The events described herein constitute a tort in violation of Article 1802 of the Civil Code of the Commonwealth of Puerto Rico, 31 L.P.R.A. § 5141.

### X. DAMAGES AND PRAYER FOR RELIEF

89. Plaintiffs respectfully request that judgment be entered in her favor and against Defendants, including the following relief:

a. Declaratory judgment against defendants for the statutory violations indicated above;

b. Compensatory damages, economic, mental, and emotional damages in an amount not less than $2,000,000 to Bonilla. Such amount would be doubled in accordance with Act 100.

c. Compensatory damages, economic, mental, and emotional damages in an amount not less than $100,000 to Tirado. Such amount would be doubled in accordance with Act 100.

d. Compensation for lost benefits, back pay and front pay in an amount not less than $415,000; Plaintiff must be indemnified twice the amount of her damages in concept of liquidated damages under ADEA.

e. Punitive damages in an amount not less than $2,000,000 for the Defendants' willful and intentional statutory violations;

f. The indemnity under Puerto Rico Law 80 for Plaintiff's wrongful discharge;

g. Imposition of pre-judgment and post-judgment legal interests;

h. Litigation costs and reasonable attorney's fees;

i. Any other relief that this court may deem just and proper.

**WHEREFORE**, it is respectfully requested that Judgment be entered in favor of the Plaintiffs as described heretofore.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 24th day of June, 2013.

**LEDESMA, VARGAS & VILLARRUBIA, P.S.C.**
P.O. Box 194089
San Juan, PR 00919
Tel: (787) 296-9500
Fax: (787) 296-9510

*s/ Francis Rodriguez Cardona*
USDC-PR No. 228705
frodriguez@lvvlaw.com


**INTEGRATED LEGAL SOLUTIONS, P.S.C.**
1760 Calle Loíza
Edificio Madrid, Suite 303
San Juan PR 00911
Teléfono: 787-268-4343
Fax: 787-727-5993

*s/ Yahira Caro Domínguez*
Yahira Caro Domínguez
USDC-PR No. 222804
ycaro@ilspr.com